## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| R.J. ZAYED, In His Capacity<br>As Court-Appointed Receiver<br>For Oxford Global Partners, LLC,<br>Universal Brokerage FX, and Other<br>Receiver Entities,<br><br>Plaintiff,<br>v.<br><br>David and Dao Allen, Judith Averett,<br>Patricia and Jasper Calandra, Rose<br>Furner, Mark Hanby, Adel ("A.K.")<br>Hilal, Geraldine Jackman, Norma<br>Johnson, Willis Wayne King, Don and<br>Pamela Labbee, Andrew Lyon, Jeffrey<br>Lyon, Jeffrey Maki, Steven Perkins,<br>Richard Plantan, Douglas Reed, David<br>Sherman, John Sterback, Mark<br>Stoltenberg, Jane Wamsley as trustee<br>for the Glen Van Lehn Living Trust,<br>Michael ("Bruce") Wu, Robert and<br>Dianne Birk, Margaret Anderson, Mary<br>Francoeur, George and Shirley Janssen,<br>Joseph Koehnen, and Katherine<br>Sobieck,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION<br><br>File No.: _____<br><br><br>**<u>COMPLAINT</u>** |

R.J. Zayed, in his capacity as Court-appointed Receiver (the "Receiver") for

Trevor Cook, Patrick Kiley, Jason Bo-Alan Beckman, UBS Diversified Growth, LLC

d/b/a UBS Diversified, Market Shot, LLC, Oxford Global Advisors, LLC, Oxford Global

Partners, LLC, Oxford Global FX, LLC, Oxford FX Growth, L.P., and various other

entities controlled by them (the "Receivership Entities") files this Complaint against

1

David and Dao Allen, Judith Averett, Patricia and Jasper Calandra, Rose Furner, Mark Hanby, Adel ("A.K.") Hilal, Geraldine Jackman, Norma Johnson, Willis Wayne King, Don and Pamela Labbee, Andrew Lyon, Jeffrey Lyon, Jeffrey Maki, Steven Perkins, Richard Plantan, Douglas Reed, David Sherman, John Sterback, Mark Stoltenberg, Jane Wamsley as trustee for the Glen Van Lehn Living Trust, Michael ("Bruce") Wu, Robert and Dianne Birk, Margaret Anderson, Mary Francoeur, George and Shirley Janssen, Joseph Koehnen, and Katherine Sobieck (collectively, the "Winning Investors"), to recover funds properly belonging to all the defrauded investors who were victims of Trevor Cook's Ponzi scheme ("the scheme") and alleges as follows:

## NATURE OF THE CASE

1.      This matter involves a Ponzi scheme that took an estimated $190 million from investors over the course of three years.  The operators of the Ponzi scheme were Trevor Cook, Patrick Kiley, Chris Pettengill, Gerald Durand, and Jason Bo-Alan Beckman.

2.      On November 23, 2009, the Securities and Exchange Commission ("SEC") and the Commodities Futures Trading Commission ("CFTC") filed separate lawsuits against Trevor Cook, Patrick Kiley, and various entities controlled by them.  *Complaint*, 09-cv-3333 Docket 1 (Nov. 23, 2009); *Complaint for Injunctive and Other Equitable Relief and For Penalties under the Commodity Exchange Act*, 09-cv-3332 Docket 1 (Nov. 23, 2009).  On March 7, 2011, the SEC filed a lawsuit against Jason Bo-Alan Beckman and various entities controlled by him.  *Complaint*, 11-cv-574 Docket 1 (Mar. 7, 2011).

3.     Trevor Cook has since admitted to, among other things, knowingly and intentionally creating and executing a scheme and artifice to defraud, and is presently serving a twenty-five year sentence in federal prison.  *See United States v. Trevor Gilson Cook*, 10-cr-75 Docket 7, at 1–3 (Apr. 13, 2010); *United States v. Trevor Gilson Cook*, 10-cr-75 Docket 17 (Aug. 24, 2010).

4.     Christopher Pettengill also has pleaded guilty to participating in the fraud and is presently serving a ninety month sentence in federal prison.  *See* Plea Agreement, *United States v. Christopher Pettengill*, 11-cr-192 Docket 6 (Jun. 21, 2011); Amended Judgment, *United States v. Christopher Pettengill*, 11-cr-192 Docket 35 (Jan. 22, 2013).

5.     Three other co-conspirators – Jason Bo-Alan Beckman, Gerald Durand, and Patrick Kiley – were indicted in the fraud.  *See* Second Superseding Indictment, *United States v. Beckman et al.*, 11-cr-228 Docket 162 (Feb. 22, 2012).  All three were found guilty of participating in the fraud.  *See* Jury Verdicts, *United States v. Beckman et al.*, 11-cr-228 Docket 303, 305 & 307 (Jun. 12, 2012).  Beckman is presently serving a thirty year sentence in federal prison.  *See* Judgment, *United States v. Beckman et al.*, 11-cr-228 (1) Docket 397 (Jan. 11, 2013).  Durand is presently serving a twenty year sentence in federal prison.  *See* Judgment, *United States v. Beckman et al.*, 11-cr-228 (2) Docket 392 (Jan. 11, 2013).  Kiley also was sentenced to twenty years in federal prison.  *See* Sentencing*, United States v. Beckman et al.*, 11-cr-228(3) Docket 437 (Jul. 15, 2013)*; see also* Court Minutes, *United States v. Beckman et al.*, 11-cr-228 (3) Docket 382 (Jan. 3, 2013); Order, *United States v. Beckman et al.*, 11-cr-228 (3) Docket 413 (Jan. 18, 2013).

6.     Victims of the scheme include hundreds of investors who collectively lost

approximately $160 million. *See Receiver's Second Amended Final Claims List*, 09-cv-3333 Docket 944-1, 09-cv-3332 Docket 908-1, 11-cv-574 Docket 273-1 (Mar. 9, 2012).

7.     On November 23, 2009, the Court established a Receivership in the related SEC and CFTC cases, appointed R.J. Zayed as Receiver, and froze all assets of the Receivership Entities. *See Order Appointing Receiver*, 09-cv-3333 Docket 13 (Nov. 23, 2009); *see also Amended Order Appointing Receiver*, 09-cv-3333 Docket 18 (Nov. 24, 2009); *Second Amended Order Appointing Receiver*, 09-cv-3333 Docket 68 (Dec. 11, 2009); *Order Imposing Asset Freeze and Other Ancillary Relief*, 09-cv-3333 Docket 14 (Nov. 23, 2009); *Order Identifying Frozen Accounts*, 09-cv-3333 Docket 15 (Nov. 23, 2009); Ex Parte *Statutory Restraining Order*, 09-cv-3332 Docket 21 (Nov. 23, 2009); *Order Continuing Appointment of Temporary Receiver*, 09-cv-3332 Docket 96 (Dec. 11, 2009).

8.     On March 8, 2011, the Court also appointed R.J. Zayed as Receiver for Beckman and several other entities. *See Order Appointing Receiver*, 11-cv-574 Docket 10 (Mar. 8, 2011); *Order Imposing Asset Freeze And Other Ancillary Relief And Setting Hearing On Motion For Preliminary Injunction*, 11-cv-574 Docket 9 (Mar. 8, 2011).

9.     The purpose of the Receivership is to marshal, preserve, account for, and liquidate the assets of the Receivership. *Order Continuing Appointment of Temporary Receiver*, 09-cv-3332 Docket 96, at 3. To accomplish this, the Receiver must take control of all assets of the Receivership—"wherever located"—including investor money transferred to third parties.

4

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action, and venue is proper, under Section 22(a) of the Securities Act (15 U.S.C. § 77v(a)), Section 27 of the Exchange Act (15 U.S.C. § 78aa), Section 6d of the Commodity Exchange Act (7 U.S.C. § 13a-2(2)), Chapter 49 of Title 28, Judiciary and Judicial Procedure (28 U.S.C. § 754), Chapter 113 of Title 28, Judiciary and Judicial Procedure (28 U.S.C. § 1692), and Chapter 85 of Title 28, Judiciary and Judicial Procedure (28 U.S.C. § 1367(a)).

11.     Further, as the Court that appointed the Receiver, this Court has jurisdiction over any claim brought by the Receiver in furtherance of his Receivership powers and duties.  *See Order of Preliminary Injunction, Asset Freeze, and Other Ancillary Relief,* 09-cv-3333 Docket 51, at 15 (Dec. 8, 2009).

12.     Further, within ten days of his appointment, the Receiver filed the original Complaint and Order Appointing the Receiver in all United States District Courts pursuant to 28 U.S.C. §§ 754 and 1692, giving this Court *in rem* and *in personam* jurisdiction in each district where the Complaint and Order have been filed.

13.     This Court is the proper venue under 28 U.S.C. § 1391(b) because a substantial part of the events resulting in the transfer of the property that is the subject of this action occurred in Minnesota.  In addition, upon information and belief, each defendant purposefully invested with at least one of the Receivership Entities located in Minnesota.  Each defendant benefited from Receivership Assets located in Minnesota.

**PARTIES**

14.     Plaintiff was appointed as Receiver for the estates of, *inter alia*, Trevor G. Cook, Patrick J. Kiley and various other entities controlled by them ("Receivership Entities") by the United States District Court for the District of Minnesota, Chief Judge Michael J. Davis presiding, on November 23, 2009 in the cases of *SEC v. Cook et al.*, 09-cv-3333, and *CFTC v. Cook et al.*, 09-cv-3332, and on March 8, 2011 in the case of *SEC v. Beckman et al.*, 11-cv-574. *Order Appointing Receiver*, No. 09-cv-3333, Doc. 13 (Nov. 23, 2009); Ex Parte *Statutory Restraining Order*, No. 09-cv-3332, Doc. 21 (Nov. 23, 2009); *Second Amended Order Appointing Receiver*, No. 09-cv-3333, Doc. 68 (Dec. 11, 2009); *Order Continuing Appointment of the Temporary Receiver*, No. 09-cv-3332, Doc. 96 (Dec. 11, 2009); *Order Appointing Receiver*, No. 11-cv-574, Doc. 10 (Mar. 8, 2011).

15.     Pursuant to the Court's Receivership Orders, the Receiver stands in the place of the Receivership Entities and is authorized to pursue all suits which may be brought by the Receivership Entities.  *Second Amended Order Appointing Receiver*, No. 09-cv-3333, Doc. 68 at 3 (Dec. 11, 2009); *Order Continuing Appointment of the Temporary Receiver*, No. 09-cv-3332, Doc. 96, at 4 (Dec. 11, 2009); *Order Appointing Receiver*, No. 11-cv-574, Doc. 10, at 3 (Mar. 8, 2011).  The Receivership Entities include "every other corporation, partnership, trust and/or entity (regardless of form) which is directly or indirectly owned by or under the direct or indirect control of Cook or Kiley, or any individual working in concert with any of the Defendants . . ." and "every other corporation, company, partnership, trust and/or other entity (regardless of form) which is directly or indirectly owned by or under the direct or indirect control of Defendant

6

Beckman . . . or Relief Defendant Hollie Beckman…" *Second Amended Order Appointing Receiver*, No. 09-cv-3333, Doc. 68, at 2 (Dec. 11, 2009); *SEC v. Cook*, Complaint, No. 09-cv-3333, Doc. 1, at 1; *see also* Ex Parte *Statutory Restraining Order*, No. 09-cv-3332, Doc. 21, at 7 (Nov. 23, 2009); *Order Appointing Receiver*, No. 11-cv-574, Doc. 10, at 2 (D. Minn. Mar. 8, 2011).

16.    The Receiver Entities include but are not limited to "Universal Brokerage FX Management, LLC;" "UBS Diversified;" "UBS Diversified, LLC;" "UBS Diversified Growth, LLC;" "UBS Global Advisors;" and "United Brokerage Services."  These entities are hereafter referred to collectively as the "UBS Entities."  *United States v. Christopher Pettengill*, 11-cr-192 Docket 6, ¶ 3(a).

17.    The Receiver Entities also include but are not limited to "Oxford Private Client Group;" "Oxford Global Advisors, LLC;" "Oxford Global Holdings;" "Oxford FX Advisors;" "Oxford FX Management, LLC;" "Oxford Institutional Growth LP;" "Oxford Global Partners, LLC;" "Oxford Global Partners;" "Oxford Capital Investments;" "Oxford Capital Holdings, LLC;" and "Oxford Global FX LLC." These entities are hereafter referred to collectively as the "Oxford Entities."  *United States v. Christopher Pettengill*, 11-cr-192 Docket 6, ¶ 3(b).

18.    At various times relevant to this Complaint, Trevor G. Cook ("Cook") owned, operated, and was the managing partner of Oxford Global Advisors, LLC ("Oxford Global Advisors") and Oxford Global Partners, LLC ("Oxford Global Partners").  Cook held himself out publicly as the chief investment director of Oxford Global Partners.  Cook also owned and operated Oxford Global FX and Market Shot and

held himself out to be a partner and managing director of UBS Diversified Growth, LLC d/b/a UBS Diversified ("UBS Diversified").

19.     Patrick J. Kiley ("Kiley") was the owner and founder of UBS Diversified and Universal Brokerage FX management, LLC ("Universal Brokerage").  At all times relevant to this Complaint, Kiley hosted a financial-themed radio show that he used to market the Currency Program.  Kiley has never been registered with the CFTC and has never been associated with any registered entity.

20.     Christopher Pettengill ("Pettengill") was an owner and founder of Oxford Global Investments Inc.  Pettengill pleaded guilty to crimes that he committed in connection with the Ponzi scheme.

21.      Jason Bo-Alan Beckman ("Beckman") was the owner and founder of The Oxford Private Client Group, LLC, an investment advisory firm registered with the SEC. Beckman was a self-styled equities expert and spoke at a number of seminars that were organized by the Oxford and UBS Entities.

22.     Similar to Kiley, Gerald Joseph Durand ("Durand") also had a radio show in furtherance of the Ponzi scheme.  Durand was a major contributor to Ponzi scheme investment seminars and presentations.

23.     Upon information and belief, Defendants David and Dao Allen are residents of Weld County in Colorado.  Upon information and belief, defendants Allen sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendants Allen received funds from at least one Receivership Entity located in Minnesota.

24.     Upon information and belief, Defendant Judith Averett is a resident of Washington County in Utah.  Defendant Averett received funds from at least one Receivership Entity located in Minnesota.

25.     Upon information and belief, Defendants Patricia and Jasper Calandra are residents of Clark County in Nevada.  Upon information and belief, defendants Calandra sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendants Calandra received funds from at least one Receivership Entity located in Minnesota.

26.     Upon information and belief, Defendant Rose Furner is a resident of Sequoyah County in Oklahoma.  Upon information and belief, defendants Furner sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendants Furner received funds from at least one Receivership Entity located in Minnesota.

27.     Upon information and belief, Defendant Mark Hanby is a resident of Denton County in Texas.  Defendant Hanby received funds from at least one Receivership Entity located in Minnesota.

28.     Upon information and belief, Defendant A.K. Hilal is a resident of Hennepin County in Minnesota.  Upon information and belief, defendant Hilal sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Hilal received funds from at least one Receivership Entity located in Minnesota.

9

29.     Upon information and belief, Defendant Geraldine Jackman is a resident of Garfield County in Colorado.  Defendant Jackman received funds from at least one Receivership Entity located in Minnesota.

30.     Upon information and belief, Defendant Norma Johnson is a resident of Yavapai County in Arizona.  Upon information and belief, defendant Johnson sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Johnson received funds from at least one Receivership Entity located in Minnesota.

31.     Upon information and belief, Defendant Willis Wayne King is a resident of Lincoln County in Oregon.  Upon information and belief, defendant King sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant King received funds from at least one Receivership Entity located in Minnesota.

32.     Upon information and belief, Defendants Don and Pamela Labbee are residents of Yakima County in Washington.  Upon information and belief, defendants Labbee sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendants Labbee received funds from at least one Receivership Entity located in Minnesota.

33.     Upon information and belief, Defendant Andrew Lyon is a resident of San Francisco County in California.  Defendant Lyon received funds from at least one Receivership Entity located in Minnesota.

10

34.     Upon information and belief, Defendant Jeffrey Lyon is a resident of Santa Clara County in California.  Defendant Lyon received funds from at least one Receivership Entity located in Minnesota.

35.     Upon information and belief, Defendant Jeffrey Maki is a resident of Saint Louis County in Minnesota.  Upon information and belief, defendant Maki sent money to and entered into agreements with at least one Receivership Entity located in Minnesota. Defendant Maki received funds from at least one Receivership Entity located in Minnesota.

36.     Upon information and belief, Defendant Steven Perkins is a resident of Kandiyohi County in Minnesota.  Upon information and belief, defendant Perkins sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Perkins received funds from at least one Receivership Entity located in Minnesota.

37.     Upon information and belief, Defendant Richard Plantan is a resident of Cook County in Illinois.  Defendant Plantan received funds from at least one Receivership Entity located in Minnesota.

38.     Upon information and belief, Defendant Douglas Reed is a resident of Putnam County in Ohio.  Upon information and belief, defendant Reed sent money to and entered into agreements with at least one Receivership Entity located in Minnesota. Defendant Reed received funds from at least one Receivership Entity located in Minnesota.

39.     Upon information and belief, Defendant David Sherman is a resident of Island County in Washington.  Upon information and belief, defendant Sherman sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Sherman received funds from at least one Receivership Entity located in Minnesota.

40.     Upon information and belief, Defendant John Sterback is a resident of Volusia County in Florida.  Upon information and belief, defendant Sterback sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Sterback received funds from at least one Receivership Entity located in Minnesota.

41.     Upon information and belief, Defendant Mark Stoltenberg is a resident of Maricopa County in Arizona.  Defendant Stoltenberg received funds from at least one Receivership Entity located in Minnesota.

42.     Upon information and belief, Defendant Jane Wamsley, as trustee for the Glen Van Lehn Living Trust, is a resident of Orange County in Florida.  Upon information and belief, defendant Van Lehn Trust sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Van Lehn Trust received funds from at least one Receivership Entity located in Minnesota.

43.     Upon information and belief, Defendant Michael Wu is a resident of Middlesex County in Massachusetts.  Defendant Wu received funds from at least one Receivership Entity located in Minnesota.

44.     Upon information and belief, Defendants Robert and Dianne Birk are residents of Maricopa County in Arizona.  Upon information and belief, defendants Birk sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendants Birk received funds from at least one Receivership Entity located in Minnesota.

45.     Upon information and belief, Defendant Margaret Anderson is a resident of Dakota County in Minnesota.  Upon information and belief, defendant Anderson sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Anderson received funds from at least one Receivership Entity located in Minnesota.

46.     Upon information and belief, Defendant Mary Francoeur is a resident of Kankakee County in Illinois.  Upon information and belief, defendant Francoeur sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Francoeur received funds from at least one Receivership Entity located in Minnesota.

47.     Upon information and belief, Defendants George and Shirley Janssen are residents of Hennepin County in Minnesota.  Upon information and belief, defendants Janssen sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendants Janssen received funds from at least one Receivership Entity located in Minnesota.

48.     Upon information and belief, Defendant Joseph Koehnen is a resident of Hennepin County in Minnesota.  Upon information and belief, defendant Koehnen sent

13

money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Koehnen received funds from at least one Receivership Entity located in Minnesota.

49.     Upon information and belief, Defendant Katherine Sobieck is a resident of Hennepin County in Minnesota.  Upon information and belief, defendant Sobieck sent money to and entered into agreements with at least one Receivership Entity located in Minnesota.  Defendant Sobieck received funds from at least one Receivership Entity located in Minnesota.

### FACTS GIVING RISE TO THIS CASE

50.     The Receiver incorporates paragraphs 1 through 49 above by reference.

**A.     Trevor Cook and his Cohorts Operated a Ponzi Scheme.**

51.     Trevor Cook, Christopher Pettengill, Jason Bo-Alan Beckman, and others, using the Receivership Entities, knowingly and intentionally created, devised, executed, and attempted to execute a scheme and artifice to defraud, and to obtain money and other things of value, by means of materially false and misleading statements and representations.  *See United States v. Trevor Gilson Cook*, 10-cr-75 Docket 7, at 1–3.

52.     At all relevant times, Cook, Pettengill, and/or other individuals formed and/or conducted business through entities identified by the terms "UBS" and/or "United Brokerage Services." These entities include but are not limited to "UBS Diversified;" "UBS Diversified, LLC;" "UBS Diversified Growth, LLC;" "UBS Global Advisors;" and "United Brokerage Services" (collectively the "UBS Entities").  *United States v. Christopher Pettengill*, 11-cr-192 Docket 6, ¶ 3(a).

14

53.     At all relevant times, Cook, Pettengill, and/or other individuals formed and/or conducted business through entities identified by the term "Oxford."  These entities include but are not limited to "Oxford Private Client Group;" "Oxford Global Advisors, LLC;" "Oxford Global Holdings;" "Oxford FX Advisors;" "Oxford FX Management, LLC;" "Oxford Institutional Growth LP;" "Oxford Global Partners, LLC;" "Oxford Global Partners;" "Oxford Capital Investments;" "Oxford Capital Holdings, LLC;" and "Oxford Global FX LLC" (collectively the "Oxford Entities").  *Id.* ¶ 3(b).

54.     During the course of the scheme, Cook and his cohorts, using the Receivership Entities, raised at least $190,000,000 from at least 1,000 investors by selling investments in a purported foreign currency trading program ("Trading Program"). *United States v. Trevor Gilson Cook*, 10-cr-75 Docket 7, at 2.  These purported investments in the Trading Program generated substantially all of the income for the Receivership Entities.  *Id.* at 1–3.

55.     In furtherance of the scheme, Cook caused false statements to be made to investors, including but not limited to promising that the Trading Program would generate annual returns of ten to twelve percent and that the currency trading involved little or no risk to the investors' principal.  *Id.* at 2.

56.     In furtherance of the scheme, Cook caused material information to be withheld from investors, including the precarious financial position of Crown Forex, SA ("CFSA") in Switzerland, an entity through which Cook was allegedly placing currency trades, and the fact that his currency trading from July 1, 2006, through August 31, 2009,

at Peregrine Financial ("PFG") in Chicago generated losses in excess of $35 million.  *Id.* at 2.

57.      In furtherance of the scheme, Cook caused an account to be opened in the name of Crown Forex LLC at Associated Bank, where he caused investor funds to be deposited and then diverted for his personal use.  *Id.* at 2.

58.      In furtherance of the scheme, Cook caused statements to be sent to investors that misrepresented the value of their investments in the Trading Program.  *Id.* at 2-3.

59.      In furtherance of the scheme, Cook withheld from the investors the fact that he was using their money for non-investment purposes, including, but not limited to paying off other investors in the scheme.  *Id.* at 3; *see also Order Allowing Summary Proceedings*, 09-cv-3333 Docket 380 & 09-cv-3332 Docket 350 (July 20, 2010).

60.      In furtherance of the scheme, Cook, Pettengill, and others provided investors with fraudulent statements purporting to show investment returns on a monthly basis.  Although these statements showed positive investment returns, the statements were produced through simple arithmetic by individuals working with Cook and his cohorts and had no basis in reality.  Employees of the Oxford Entities simply multiplied an investor's principal by the promised rate of return to get the reported monthly investment return.  *United States v. Christopher Pettengill*, 11-cr-192 Docket 6, ¶ 3(i).

61.      Cook and his cohorts then used that number to create monthly lulling checks.  In reality, the returns reflected on the statements and checks bore no relationship to the actual returns on assets invested through the Oxford Entities.  *Id.*

16

62.     All assets transferred from or by any Receivership Entity named in the above-captioned lawsuits, at least through November 23, 2009, were transferred pursuant to the Ponzi scheme. *Order Allowing Summary Proceedings*, 09-cv-3333 Docket 380 & 09-cv-3332 Docket 350, at 3 (July 20, 2010).

63.     All assets transferred from or by Cook, from at least August 2005 through at least November 23, 2009, were transferred pursuant to the Ponzi scheme. *Order Allowing Summary Proceedings*, 09-cv-3333 Docket 380 & 09-cv-3332 Docket 350, at 3 (July 20, 2010).

64.     Prior to March 2009, Beckman took approximately $7.8 million in investor funds from Receivership Entity accounts. *Declaration of Luz M. Aguilar*, 11-cv-574 Docket 4 ¶¶ 23-25 (Mar. 7, 2011). Beckman further dissipated the stolen investor funds for his personal use, including luxury car purchases and rentals, real estate acquisitions, credit card payments, travel, country club membership, and "support gifts" to family members. *See id.* ¶ 26. Beckman has since been convicted of and sentenced for, among other criminal activities, money laundering. *See Jury Verdict*, 11-cr-228 (1) Docket 303 (Jun. 12, 2012); *see also Second Superseding Indictment*, 11-cv-228 Docket 162 (Feb. 22, 2012).

**B.   At All Relevant Times Trevor Cook and His Cohorts Knew the Receivership Entities Were Insolvent**

65.     By no later than February 27, 2008, Pettengill and others knew CFSA was "illiquid." *United States v. Christopher Pettengill*, 11-cr-192 Docket 6, ¶ 3(n).

66.     Cook, Pettengill, and others knew that CFSA had received at least $15

million in investor funds but had only $1 million in assets remaining.  *Id.*

67.     In furtherance of the scheme, Cook withheld from investors the fact that he was diverting funds that were to be invested for other purposes, including, but not limited to: (1) interest and principal payments to other investors; (2) purchase of ownership interests in two trading firms; (3) real estate development in Panama; (4) payment of personal expenses, including substantial gambling debts; (5) acquisition of the Van Dusen Mansion; and (6) providing funds to CFSA in an effort to deceive Swiss banking regulators.  *United States v. Trevor Gilson Cook*, 10-cr-75 Docket 7, at 3.

68.     Beginning on or before November 20, 2006, Cook transferred at least $4,324,874.00 of investor funds to gambling institutions.  Exhibit 3 to the *Declaration of Scott J. Hlavacek*, 09-cv-3333 Docket 4-2 at 29-30 (Nov. 23, 2009).

69.     On March 21, 2008, Cook, Durand and their cohorts transferred $400,000.00 of investor funds to a movie production company.  Exhibit 9 to the *Declaration of Scott J. Hlavacek*, 09-cv-3333 Docket 4-2 at 60, 69 (Nov. 23, 2009); *see also Second Superseding Indictment*, 11-cr-228 Docket 162 at 33-34 (Feb. 22, 2012); *Verdict Form*, 11-cr-228 (2) Docket 305 ¶ 14 (Jun. 12, 2012).

70.     Beginning on or before August 3, 2006, Cook transferred at least $7,623,104.00 of investor funds to his personal accounts.  Exhibit 3 to the *Declaration of Scott J. Hlavacek*, 09-cv-3333 Docket 4-2 at 30-32.

71.     Beginning on or before September 14, 2006, Cook, Beckman and their cohorts transferred at least $12,767,801.63 of investor funds to accounts for the benefit of Beckman and his wife.  Exhibit 18 to the *Declaration of Scott J. Hlavacek*, 09-cv-3333

Docket 4-3 at 9-10 (Nov. 23, 2009).

**C.    Transfers by Trevor Cook and his Cohorts Made Defendants "Winning Investors" in this Ponzi Scheme.**

72.    Cook and his cohorts made transfers to the Winning Investors from accounts held in the name of various Receivership Entities, including, but not limited to, Oxford Global Advisors LLC, Crown Forex LLC, UBS Diversified Growth LLC, and Universal Brokerage FX Management LLC.  Attached hereto as **Exhibit A** is a table summarizing transfers to the Winning Investors from Receivership Entities.  These transfers were in excess of any transfers made by the Winning Investors to Receivership Entities.

73.    Defendants David and Dao Allen received at least two transfers from Receivership Entities totaling $56,788.00.  On or around March 19, 2009, $9,557.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC to Millennium Trust for the benefit of Dao Allen.  On or around June 13, 2008, $47,231.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC to Millennium Trust for the benefit of David Allen.

74.    Upon information and belief, Winning Investors David and Dao Allen transferred $53,400.00 to Receivership Entities.  Defendants Allen received at least $3,388.00 from Receivership Entities in excess of their deposits.

75.    Defendant Judith Averett received at least one transfer from a Receivership Entity totaling $28,000.00.  On or around August 16, 2007, $28,000.00 was transferred to

Judith Averett via check number 1141 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.

76.     Defendants Patricia and Jasper Calandra received at least six transfers from Receivership Entities totaling $30,549.62.  On or around September 8, 2008, $3,634.00 was transferred to Jasper Calandra via check number 5100 drawn on Associated Bank account ending 5601 held in the name of Universal Brokerage FX Management LLC.  On or around February 19, 2009, $2,000.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Patricia Calandra.  On or around April 14, 2009, $8,000.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Patricia Calandra.  On or around April 24, 2009, $6,867.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Patricia Calandra.  On or around June 1, 2009, $9,548.62 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Patricia Calandra. On or around June 17, 2009, $500.00 was transferred to Patricia Calandra via check number 5463 drawn on Associated Bank account ending 5601 held in the name of Universal Brokerage FX Management LLC.

77.     Upon information and belief, Winning Investors Jasper and Patricia Calandra transferred $28,000.00 to Receivership Entities.  Defendants Calandra received at least $1,549.62 from Receivership Entities in excess of their deposits.

78.     Defendant Rose Furner received at least one transfer from a Receivership Entity totaling $35,411.00.  On or around March 10, 2009, $35,411.00 was transferred to

Rose Furner via check number 800253 drawn on Associated Bank account ending 1705 held in the name of Crown Forex LLC.

79.     Upon information and belief, Winning Investor Rose Furner transferred $26,425.00 to Receivership Entities.  Defendant Furner received at least $8,986.00 from Receivership Entities in excess of her deposits.

80.     Defendant Mark Hanby received at least one transfer from a Receivership Entity totaling $4,800.00.  On or around September 24, 2007, $4,800.00 was transferred to Mark Hanby via check number 1183 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.

81.     Defendant Adel Hilal received at least one transfer from a Receivership Entity totaling $56,201.14.  On or around April 7, 2009, $56,201.14 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC to Millennium Trust for the benefit of A. K. Hilal.

82.     Upon information and belief, Winning Investor Adel "A.K." Hilal transferred $49,000.00 to Receivership Entities.  Defendant Hilal received at least $7,201.14 from Receivership Entities in excess of his deposits.

83.     Defendant Geraldine Jackman received at least one transfer from a Receivership Entity totaling $35,590.00.  On or around December 24, 2007, $35,590.00 was transferred to Geraldine Jackman via check number 1302 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.

84.     Defendant Norma Johnson received at least ten transfers from Receivership Entities totaling $203,369.78.  On or around July 17, 2008, $422.00 was transferred from

Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC to Norma Johnson.  On or around August 1, 2008, $844.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Norma Johnson.  On or around September 2, 2008, $844.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Norma Johnson.  On or around October 2, 2008, $844.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Norma Johnson.  On or around November 3, 2008, $844.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Norma Johnson.  On or around December 2, 2008, $1,750.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Norma Johnson.  On or around January 2, 2009, $1,750.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Norma Johnson.  On or around February 4, 2009, $1,673.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Norma Johnson.  On or around March 2, 2009, $1,673.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Norma Johnson.  On or around March 24, 2009, $192,725.78 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Norma Johnson.

85.     Upon information and belief, Winning Investor Norma Johnson transferred $200,000.00 to Receivership Entities.  Defendant Johnson received at least $3,369.78 from Receivership Entities in excess of her deposits.

86. Defendant Willis Wayne King received at least ten transfers from Receivership Entities totaling $106,113.40. On or around August 1, 2008, $2,110.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to (Willis) Wayne King. On or around September 2, 2008, $844.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Willis Wayne King. On or around October 1, 2008, $844.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Willis Wayne King. On or around November 3, 2008, $844.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Willis Wayne King. On or around January 2, 2009, $844.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Willis Wayne King. On or around February 4, 2009, $846.64 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to (Willis) Wayne King. On or around March 2, 2009, $846.64 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to (Willis) Wayne King. On or around April 1, 2009, $846.64 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to (Willis) Wayne King. On or around May 1, 2009, $846.64 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to (Willis) Wayne King. On or around May 22, 2009, $97,240.84 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to (Willis) Wayne King.

87. Upon information and belief, Winning Investor Willis Wayne King transferred $100,000.00 to Receivership Entities. Defendant King received at least

$6,113.40 from Receivership Entities in excess of his deposits.

88.     Defendants Don and Pamela Labbee received at least one transfer from a Receivership Entity totaling $109,501.00.  On or around August 4, 2008, $109,501.00 was transferred to Don and Pamela Labbee via check number 5066 drawn on Associated Bank account ending 5601 held in the name of Universal Brokerage FX Management LLC.

89.     Upon information and belief, Winning Investors Don and Pamela Labbee transferred $100,000.00 to Receivership Entities.  Defendants Labbee received at least $9,501.00 from Receivership Entities in excess of their deposits.

90.     Defendant Andrew Lyon received at least one transfer from a Receivership Entity totaling $41,081.99.  On or around March 26, 2008, $41,081.99 was wired from Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC to an eTrade account held in the name of Andrew Lyon.

91.     Defendant Jeffrey Lyon received at least one transfer from a Receivership Entity totaling $41,081.99.  On or around March 26, 2008, $41,081.99 was wired from Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC to an eTrade account held in the name of Jeffrey Lyon.

92.     Defendant Jeffrey Maki received at least seven transfers from Receivership Entities totaling $168,080.00.  On or around April 13, 2007, $5,000.00 was transferred to Jeff Maki via check number 1068 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around July 6, 2007, $7,500.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth

LLC to Trinity Consulting Service for the benefit of Jeff Maki.  On or around September 18, 2007, $45,000.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC to Jeffrey Maki.  On or around March 3, 2008, $7,500.00 was transferred to Jeff Maki via check number 1389 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around June 9, 2008, $7,000.00 was transferred to Jeffrey Maki via check number 1538 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around September 19, 2008, $11,748.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Jeff Maki.  On or around September 19, 2008, $84,332.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Jeff Maki.

93.     Upon information and belief, Winning Investor Jeffrey Maki transferred $152,164.28 to Receivership Entities.  Defendant Maki received at least $15,915.72 from Receivership Entities in excess of his deposits.

94.     Defendant Steven Perkins received at least five transfers from Receivership Entities totaling $146,849.00.  On or around December 11, 2007, $5,000.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC to Steve Perkins.  On or around February 28, 2008, $5,000.00 was wired from Wells Fargo account ending 5614 held in the name of Oxford Global Advisors LLC to Steven Perkins.  On or around April 17, 2008, $40,000.00 was transferred to Millennium Trust for the benefit of Steve Perkins via check number 1465 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around June 30,

2008, $60,000.00 was wired from Wells Fargo account ending 2710 held in the name of

UBS Diversified Growth LLC to Millennium Trust for the benefit of Steve Perkins.  On

or around January 15, 2009, $36,849.00 was wired from Associated Bank account ending

1705 held in the name of Crown Forex LLC to Entrust Midwest for the benefit of Steve

Perkins.

95.     Upon information and belief, Winning Investor Steven Perkins transferred

$132,000.00 to Receivership Entities.  Defendant Perkins received at least $14,849.00

from Receivership Entities in excess of his deposits.

96.     Defendant Richard Plantan received at least one transfer from a

Receivership Entity totaling $1,000.00.  On or around January 24, 2008, $1,000.00 was

wired from Wells Fargo account ending 2710 held in the name of UBS Diversified

Growth LLC to Richard Plantan.

97.     Defendant Douglas Reed received at least one transfer from a Receivership

Entity totaling $24,012.00.  On or around February 6, 2009, $24,012.00 was transferred

to Douglas Reed via check number 5321 drawn on Associated Bank account ending 5601

held in the name of Universal Brokerage FX Management LLC.

98.     Upon information and belief, Winning Investor Douglas Reed transferred

$15,000.00 to Receivership Entities.  Defendant Reed received at least $9,012.00 from

Receivership Entities in excess of his deposits.

99.     Defendant David Sherman received at least one transfer from a

Receivership Entity totaling $29,690.00.  On or around April 7, 2009, $29,690.00 was

transferred to David Sherman via check number 5389 drawn on Associated Bank account ending 5601 held in the name of Universal Brokerage FX Management LLC.

100.   Upon information and belief, Winning Investor David Sherman transferred $25,000.00 to Receivership Entities.  Defendant Sherman received at least $4,690.00 from Receivership Entities in excess of his deposits.

101.   Defendant John Sterback received at least one transfer from a Receivership Entity totaling $387,574.00.  On or around May 30, 2008, $387,574.00 was transferred to John Sterback via check number 5001 drawn on Associated Bank account ending 5601 held in the name of Universal Brokerage FX Management LLC.

102.   Upon information and belief, Winning Investor John Sterback transferred $375,000.00 to Receivership Entities.  Defendant Sterback received at least $12,574.00 from Receivership Entities in excess of his deposits.

103.   Defendant Mark Stoltenberg received at least one transfer from a Receivership Entity totaling $3,500.00.  On or around April 2, 2008, $3,500.00 was transferred to Mark Stoltenberg via check number 1423 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.

104.   Defendant Jane Wamsley as trustee for the Glen Van Lehn Living Trust received at least one transfer from a Receivership Entity totaling $12,972.00.  On or around December 19, 2007, $12,972.00 was transferred to Jane Wamsley as trustee for the Glen Van Lehn Living Trust via check number 1303 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.

105.   Upon information and belief, Winning Investor Glen Van Lehn Living

Trust transferred $6,594.00 to Receivership Entities.  Defendant Van Lehn Trust received at least $6,378.00 from Receivership Entities in excess of its deposits.

106.   Defendant Michael Wu received at least one transfer from a Receivership Entity totaling $14,754.00.  On or around March 25, 2009, $14,754.00 was transferred to Michael Wu via check number 800265 drawn on Associated Bank account ending 1705 held in the name of Crown Forex LLC.

107.   Defendants Robert and Dianne Birk received at least 115 transfers from Receivership Entities totaling $300,459.65.  *See* Exhibit A (detailing all 115 transfers).

108.   Upon information and belief, Winning Investors Robert and Dianne Birk transferred $187,779.36 to Receivership Entities.  Defendants Robert and Dianne Birk received at least $112,680.29 from Receivership Entities in excess of their deposits.  *See also Declaration of Joseph M. Kaczrowski in Support of Receiver's Motion to Enter Second Amended Final Claims List*, 09-cv-3333 Docket 944 ¶ 6 (Mar. 9, 2012).

109.   Defendant Margaret Anderson received at least one transfer from a Receivership Entity totaling $57,762.00.  On or around May 12, 2008, $57,762.00 was wired from Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC.

110.   Upon information and belief, Winning Investor Margaret Anderson transferred $50,000.00 to Receivership Entities.  Defendant Anderson received at least $7,762.00 from Receivership Entities in excess of her deposits.

111.   Defendant Mary Francoeur received at least one transfer from a Receivership Entity totaling $85,005.00.  On or around May 12, 2008, $85,005.00 was

wired from Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC.

112.    Upon information and belief, Winning Investor Mary Francoeur transferred $75,000.00 to Receivership Entities.  Defendant Francoeur received at least $10,005.00 from Receivership Entities in excess of her deposits.

113.    Defendants George and Shirley Janssen received at least six transfers from Receivership Entities totaling $60,250.00.  On or around July 1, 2008, $1,500.00 was transferred from Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC.  On or around June 5, 2008, $52,750.00 was wired from Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC.  On or around April 9, 2008, $1,500.00 was transferred from Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC.  On or around January 7, 2008, $1,500.00 was transferred to George Janssen via check number 70022 drawn on Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC.  On or around October 5, 2007, $1,500.00 was transferred to George Janssen via check number 1200 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around July 6, 2007, $1,500.00 was transferred to George Janssen via check number 1110 drawn on Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.

114.    Upon information and belief, Winning Investors George and Shirley Janssen transferred $50,000.00 to Receivership Entities.  Defendants Janssen received at least $10,250.00 from Receivership Entities in excess of their deposits.

115.    Defendant Joseph Koehnen received at least one transfer from a Receivership Entity totaling $57,161.00.  On or around May 22, 2008, $57,161.00 was transferred to Joseph Koehnen via check number 70155 drawn on Wells Fargo account ending 5598 held in the name of Oxford Global Advisors LLC.

116.    Upon information and belief, Winning Investor Joseph Koehnen transferred $50,000.00 to Receivership Entities.  Defendant Koehnen received at least $7,161.00 from Receivership Entities in excess of his deposits.

117.    Defendant Katherine Sobieck received at least fourteen transfers from Receivership Entities totaling $338,670.80.  On or around July 10, 2007, $1,000.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around July 11, 2007, $2,400.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around July 30, 2007, $1,333.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around August 29, 2007, $2,000.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around September 25, 2007, $3,000.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around October 31, 2007, $3,000.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around November 30, 2007, $3,000.00 was wired from Wells Fargo account ending 2710 held in the name of UBS Diversified Growth LLC.  On or around June 26, 2008, $1,437.80 was transferred to Katherine Sobieck via check number 8492 drawn on Wells Fargo account ending 5614 held in the

30

name of Oxford Global Advisors LLC.  On or around August 5, 2008, $3,000.00 was transferred to Katherine Sobieck via check number 800000 drawn on Associated Bank account ending 1705 held in the name of Crown Forex LLC.  On or around September 5, 2008, $3,000.00 was transferred to Katherine Sobieck via check number 800050 drawn on Associated Bank account ending 1705 held in the name of Crown Forex LLC.  On or around October 8, 2008, $3,000.00 was transferred to Katherine Sobieck via check number 800095 drawn on Associated Bank account ending 1705 held in the name of Crown Forex LLC.  On or around November 7, 2008, $3,000.00 was transferred to Katherine Sobieck via check number 800140 drawn on Associated Bank account ending 1705 held in the name of Crown Forex LLC.  On or around December 5, 2008, $3,000.00 was transferred to Katherine Sobieck via check number 800176 drawn on Associated Bank account ending 1705 held in the name of Crown Forex LLC.  On or around December 19, 2008, $306,500.00 was wired from Associated Bank account ending 1705 held in the name of Crown Forex LLC to Katherine Sobieck.

118.    Upon information and belief, Winning Investor Katherine Sobieck transferred $300,000.00 to Receivership Entities.  Defendant Sobieck received at least $38,670.80 from Receivership Entities in excess of her deposits.

119.    To date, Winning Investor Sobieck has returned $32,837.45 of the excess to the Receiver.  Defendant Sobieck still has retained at least $5,833.35 in excess of her deposits.

120.    The transfers made to the Winning Investors came directly from funds provided by hundreds of victim investors in Cook's fraudulent scheme.

121.    Upon information and belief, to the extent any Winning Investor invested in Receivership Entities, the transfers made to each Winning Investor exceeded the amount that he or she invested.

## COUNT I
## FRAUDULENT TRANSFER (Minn. Stat. §513.41, *et seq.*)

122.    The Receiver realleges, and adopts by reference the allegations contained in all paragraphs above as if stated herein.

123.    As discussed above, each Winning Investor received transfers from the Receivership Entities.

124.    All assets transferred from or by the Receivership Entities to the Winning Investors were transferred pursuant to the Ponzi scheme.

125.    Cook, Pettengill, Beckman, and employees of the Receivership Entities transferred funds to each Winning Investor with actual intent to hinder, delay, or defraud their creditors.

126.    At all relevant times and as a consequence of the transfers, Cook, Pettengill, Beckman, and their cohorts knew that the funds remaining with the Receivership Entities were insufficient to pay creditors of and/or investors in the scheme.

127.    Pursuant to Minn. Stat. § 513.41, *et seq.*, each transfer made to Winning Investors was a fraudulent transfer as to the other investors defrauded by the scheme—the creditors of the Receivership Entities—and the Receiver has the power to avoid such transfers.

## COUNT II
## UNJUST ENRICHMENT

128.    The Receiver realleges, and adopts by reference the allegations contained in all paragraphs above as if stated herein.

129.    While the vast majority of the victim investors in Cook's scheme were unable to recover the money they invested in the Receivership Entities, Winning Investors received transfers in excess of any investment they made.

130.    Each Winning Investor has been unjustly enriched by the receipt of the transfers from Receivership Entities.

131.    The Winning Investors' retention of these funds at the expense of other defrauded investors who lost essentially the full amount of their investments violates fundamental principles of justice, equity, and good conscience.

132.    The doctrine of unjust enrichment and the principles of law and equity require that the funds received by each Winning Investor – at least to the extent those funds exceeded each Winning Investor's principal investment – be returned to the Receiver for equitable distribution to all defrauded investors.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver demands judgment against each Defendant for (i) actual compensatory, consequential, incidental, special and exemplary punitive damages in an amount to be proven at trial; (ii) such civil penalties as allowed by law; (iii) pre-judgment and post-judgment interest as allowed by law; and (iv) such other and further legal and equitable relief as the Court deems just and proper.

Dated:  July 15, 2013     Respectfully submitted,

            *s/ Tara C. Norgard*
            Tara C. Norgard (MN Bar No. 307,683)
            Joseph M. Kaczrowski (MN Bar No. 387,843)
            Carlson, Caspers, Vandenburgh,
             Lindquist & Schuman, P.A.
            225 S. 6th Street, Suite 4200
            Minneapolis, MN  55402
            Telephone: (612) 436-9600
            Facsimile: (612) 436-9605
            tnorgard@carlsoncaspers.com
            jkaczrowski@carlsoncaspers.com

            *Attorneys for Plaintiff R.J. Zayed, in his*
            *capacity as court-appointed Receiver for*
            *Oxford Global Partners, Universal Brokerage*
            *FX, and other Receivership Entities*